UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES E. REID, II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:12-cv-1230-TWP-TAB |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff James E. Reid, II ("Mr. Reid") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB"), under Title II of the Social Security Act ("the Act"). For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further proceedings consistent with the opinion of the Court.

## I. BACKGROUND

**A. Procedural History**

On December 29, 2009, Mr. Reid filed an application for DIB, alleging a disability onset date of January 14, 2009. Mr. Reid's application was initially denied on March 26, 2010, and again denied upon reconsideration on May 20, 2010. Thereafter, Mr. Reid filed a written request for a hearing. A video hearing was held on May 6, 2011, before Administrative Law Judge Gregory M. Hamel ("the ALJ"). The ALJ presided over the hearing from Falls Church, Virginia, and Mr. Reid, represented by counsel, appeared in Indianapolis, Indiana. Impartial vocational expert Ray O. Burger ("the VE") also testified at the hearing. On May 27, 2011, the ALJ found

that Mr. Reid was not disabled under sections 216(i) and 223(d) of the Social Security Act, and thus denied Mr. Reid's application. Subsequently, Mr. Reid submitted a request for review of the ALJ's decision, which was denied by the Appeals Council on June 26, 2012, thereby rendering it the agency's final decision for the purposes of judicial review. Mr. Reid filed this civil action, pursuant to 42 U.S.C. § 405(g), for review of the ALJ's decision.

**B.     Factual History**

At the time of the ALJ's decision, Mr. Reid was a forty-two year-old resident of Indianapolis, Indiana. Mr. Reid graduated from high school and lived at home with his wife and three children. The children were, at the time of the hearing, eight, ten, and sixteen years old. Before the alleged onset date of disability, Mr. Reid worked as a warehouse worker, plumber, roofing salesperson, and car salesperson.

At the hearing, Mr. Reid testified that he left his last job because of difficulties associated with his medical conditions; specifically, shortness of breath, pain and swelling in his lower extremities, chest pain, and pain in his shoulder. For these same reasons, Mr. Reid claims he is currently unable to work. The record shows that Mr. Reid continued to receive significant earnings throughout 2009, totaling approximately $30,000.00, despite claiming that he did not work past his January 2009 onset date. Mr. Reid explained that the payment disbursements were part of a prior arrangement made with his last employer and maintains that he did not work after January 14, 2009. Six to eight months after Mr. Reid stopped working, his last employer dissolved. Mr. Reid testified that, at the time he decided to leave the company, he had no knowledge of the company's eventual move to dissolve.

Medical records show that Mr. Reid had a history of neuropathy, diabetes, pulmonary hypertension, and back problems. He also was obese, weighing approximately 345 pounds,

despite being only five feet, ten inches tall. On March 24, 2010, a state medical consultant, Dr. J.V. Corcoran ("Dr. Corcoran") completed a physical residual capacity form without physically examining Mr. Reid. Dr. Corcoran believed that Mr. Reid could lift and carry 20 pounds occasionally, and 10 pounds frequently. Dr. Corcoran also noted that Mr. Reid could stand, walk, and sit for six hours out of an eight hour workday; however, Mr. Reid should never climb ladders, ropes, or scaffolds. Dr. Corcoran also believed Mr. Reid could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. Finally, Dr. Corcoran suggested that Mr. Reid should avoid concentrated exposure to hazards such as machinery and heights.

On February 19, 2010, Dr. David Dunkle ("Dr. Dunkle"), who was Mr. Reid's family doctor, completed a physical capabilities evaluation where he noted that Mr. Reid could sit for one hour at a time and stand for one-half hour at a time. During the entirety of a workday, Dr. Dunkle opined that Mr. Reid could sit for a total of four hours; stand for a total of two hours; and walk for a total of one hour. In Dr. Dunkle's opinion, Mr. Reid could occasionally lift 20 pounds and perform postural activities occasionally, but should never bend, stoop, squat, crouch, crawl, or climb ladders. Mr. Reid could also use his right foot, but not his left for repetitive movement such as pushing and pulling leg controls.

On July 26, 2010, Dr. Dunkle completed a Medical Source Statement (Physical) in which he noted that Mr. Reid could seldom carry 10-20 pounds, but never lift more than that. Dr. Dunkle also suggested that, as long as Mr. Reid alternated between sitting, standing, and walking every forty-five minutes, Mr. Reid could sit for four hours, and stand for two hours during eight hour workday. Mr. Reid could frequently operate leg controls with his right leg, but only occasionally with his left. Occasionally, Mr. Reid had to elevate his legs and required the use of a cane only in certain situations.

Mr. Reid testified that he engaged in various types of limited activities. Frequently, he drove his daughter to school and drove himself to doctor visits, but would let his wife drive longer distances because he was not capable of driving more than a couple of hours. Mr. Reid had the ability to talk on the telephone, watch television, and use a computer. He was able to take care of his hygienic needs on his own, but did not have the ability to do laundry, yard work, or take out the trash. Mr. Reid occasionally tried to help out around the house by folding the laundry and washing dishes, but needed to pull a chair in front of the sink to wash dishes and often found that too overwhelming. When asked what other activities he engaged in outside of the house, Mr. Reid revealed his involvement with the local Boy Scouts. As a volunteer Charter Organization Representative, Mr. Reid served as a liaison between the Boy Scouts and the church, attended meetings once a week, and at least once, went on a six day camping trip.

At the hearing, the VE asked to consider a hypothetical involving a person of Mr. Reid's age, education, and work experience, who would be limited to light work that involved only occasional claiming of stairs, balancing, stooping, kneeling, crouching, and crawling, and could not climb ladders or similar devices or work in hazardous environments, such as at heights or around dangerous machinery. The VE testified that an individual with the limitations described by the ALJ could perform Mr. Reid's past work as a roofing salesperson and a car salesperson. The VE was also asked to consider a hypothetical involving an individual with the same vocational characteristics and limitations as described in the previous hypothetical, and the additional limitation of being confined to sedentary work. The VE testified that this hypothetical individual could perform sedentary level jobs such as assembler, packager, and inspector.

The ALJ found that Mr. Reid did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404 and Mr. Reid now appeals for review of the ALJ's decision.

## II. DISABILITY AND STANDARD OF REVIEW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities) that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v.*

*Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 416.920(a)(4)(v). When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step. *Zuraawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 42 U.S.C. § 405(g). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon*, 270 F.3d at 1176. Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

As an initial matter, the ALJ found that Mr. Reid met the insured status requirements of the Act through December 31, 2014. Turning his attention to step one of the disability sequential analysis, the ALJ found that Mr. Reid had engaged in substantial gainful activity since January 14, 2009, the alleged onset date. The ALJ found that Mr. Reid had received significant earnings, in the amount of $30,000.00, through 2009. This amount suggests that Mr. Reid earned approximately $2,500.00 per month, which exceeds the $980.00 per month that, according to CFR 404.157(b)(3)(i), is sufficient for a showing of significant gainful activity. However, the ALJ went on to determine that it was not clear when Mr. Reid actually stopped working at the substantial gainful activity level, and therefore continued with the full sequential evaluation process. Neither Mr. Reid nor the Commissioner contest this finding.

At step two, the ALJ found that Mr. Reid has the following severe impairments: diabetes mellitus type II, bilateral carpal tunnel syndrome status post-release surgery, obstructive sleep apnea with secondary pulmonary hypertension, and right shoulder impingement syndrome. Although Mr. Reid's conditions were improved by surgical intervention and prescribed medication treatment, the ALJ found that the combination of impairments were nonetheless "severe" within the meaning of the regulations because they had resulted in significant limitations on the claimant's ability to perform basic work activities.

At step three, the ALJ found that Mr. Reid did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Mr. Reid had a RFC to perform a limited range of light work as defined in 20 CFR 404.1567(b). Specifically, the ALJ found that Mr. Reid was able to lift and carry twenty pounds occasionally and ten pounds frequently. Mr. Reid was also

able to sit, stand, and walk approximately six hours in an eight-hour workday. However, he was only occasionally able to climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. Furthermore, the ALJ found that Mr. Reid was precluded from climbing ropes, ladders, and scaffolds; working in hazardous environments; and must avoid exposure to excessive dust fumes, gases, and other pulmonary irritants. Finally, Mr. Reid could only occasionally do overhead reaching.

At step four, the ALJ determined that Mr. Reid was capable of performing past relevant work as a roofing salesperson and car salesperson. For this determination, the ALJ relied on the VE, who testified that Mr. Reid's past relevant work was all performed at a light level. The ALJ found that performing past relevant work would, therefore, not exceed Mr. Reid's RFC.

At step five, the ALJ found that even if Mr. Reid were limited to sedentary work, there would still be jobs in the economy that Mr. Reid could perform. In making that determination, the ALJ relied on the VE's testimony that, considering Mr. Reid's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he could perform; thus, Mr. Reid was not disabled for the purposes of the Act from his alleged onset date, through the date of the ALJ's decision.

## IV. DISCUSSION

Mr. Reid raises four issues on appeal, which he alleges are sufficient to reverse the final decision of the Commissioner and enter judgment with directions to grant his claims for disability. First, Mr. Reid asserts that the ALJ erred in giving great weight to the opinions of a non-treating physician instead of giving controlling weight to his treating physician, Dr. Dunkle. Next, Mr. Reid contends that the ALJ erred in failing to consider his obesity. Third, Mr. Reid argues the ALJ's RFC finding is unsupported by substantial evidence of the record. Finally, Mr.

Reid argues the ALJ committed reversible error in determining that Mr. Reid could return to his past relevant work as a roofing or car salesperson.

The Court finds that the ALJ erred by failing to articulate why less weight was given to a treating physician and the claimant's obesity was not properly considered. The ALJ's RFC finding should, therefore, be re-evaluated on remand, articulating the weight given to the treating physician and properly considering Mr. Reid's obesity. Consequently, the question of whether Mr. Reid can return to his past relevant work should also be re-evaluated. Thus, the final decision of the Commissioner is **REMANDED** for further proceedings consistent with this opinion.

**A.      The ALJ did not give sufficient weight to the opinion of a treating physician.**

Mr. Reid argues that the ALJ failed to give proper weight to the opinion of treating physician Dr. Dunkle. "An ALJ must give 'controlling weight' to a treating source's opinion if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.'" *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); 20 C.F.R. § 404.1527(d)(2). "An ALJ must offer 'good reasons' for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

The ALJ found that inconsistencies between Dr. Dunkle's opinion on Mr. Reid's physical limitations and other substantial evidence in the record were sufficient to refuse giving controlling weight to Dr. Dunkle's assessment. Specifically, the ALJ stated that Dr. Dunkle contradicted his previous medical source statement when, four months later, he noted that Mr. Reid was doing well on Gabapentin. It is, however, factually inaccurate to attribute the latter statement to Dr. Dunkle. Mr. Reid points out, and the Commissioner concedes, that the statement about Mr. Reid's improved condition was contained in a letter from Dr. Cushing to Dr.

9

Dunkle rather than coming from Dr. Dunkle. The inaccuracy of attributing this particular statement to Dr. Dunkle when it was not his medial opinion makes the ALJ's reason for not giving controlling weight to Dr. Dunkle's opinion insufficient. Importantly, the ALJ does not identify any other inconsistencies that are sufficient to give less than controlling weight to Dr. Dunkle's opinions.

Where an AJL has failed to identify the inconsistencies between the treating physician's opinion and the objective medical evidence of record, courts have found that remand was proper. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). Since the only reason given by the ALJ for not affording Dr. Dunkle's opinion controlling weight was a factually inaccurate statement and no other inconsistencies were identified, the Court finds that remand on this issue is proper.

**B.     The claimant's obesity was not properly considered by the ALJ in Step 3 of the analysis.**

Mr. Reid also contends that the ALJ did not properly consider his obesity at Steps 2, 3, 4, and 5 of the evaluation process. Social Security Ruling 02-1p covers the evaluation of obesity. An ALJ can find that a listing is met, or medically equaled, if obesity increases the severity of impairment to the extent that the increase in severity allows for the impairment to meet or medically equal the listing. *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006); Social Security Ruling 02-1p.

A look at the ALJ's Step 3 analysis reveals that the ALJ did not factor in Mr. Reid's obesity when determining whether or not Mr. Reid's conditions met, or medically equaled, one of the listed impairments in 20 CFR Part 404. There is no mention of Mr. Reid's weight and/or body index in the ALJ's Step 3 analysis, despite the record having substantial evidence demonstrating Mr. Reid's obesity (Tr. 288, 335, 502, 580). When impairments are either musculoskeletal or respiratory, it is especially true that obesity should factor into an ALJ's

10

decision. Social Security Ruling 02-1p. Here, Mr. Reid's carpel tunnel syndrome and right shoulder impingement were analyzed by the ALJ as musculoskeletal impairments, while his asthma and chronic obstructive pulmonary disease were analyzed as respiratory impairments. Despite Mr. Reid's impairments being of the type that can be magnified by an increase in weight, his obesity was not mentioned anywhere in the Step 3 analysis, which supports the inference that obesity was not considered by the ALJ.

Although the Commissioner correctly states that when an ALJ relies on opinions of doctors who were familiar with the claimant's obesity, the court can assume that the obesity was indirectly factored into the ALJ's decision as part of that doctor's opinion, *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004), there was minimal, if any, reliance on Dr. Dunkle's opinion for Step 3 of the analysis. As the treating physician and family doctor, Dr. Dunkle had the most familiarity with Mr. Reid's obesity, and while his opinion was considered in Steps 4 and 5 of the analysis, there was no reliance on his opinion to determine whether or not Mr. Reid's impairments met, or medically equaled, any of the listed impairments. Therefore, on remand, Mr. Reid's obesity should be factored into Step 3 of the ALJ's analysis.

**C.     It is unnecessary for the Court to determine whether the ALJ's RFC was supported by substantial evidence and whether Mr. Reid can return to past relevant work.**

Finally, Mr. Reid argues that the ALJ's RFC is unsupported by the substantial evidence of the record and that the ALJ committed reversible error when he determined that Mr. Reid could return to past relevant work. It is, however, unnecessary for the Court to evaluate the validity of Mr. Reid's final claims because, if it is determined that Mr. Reid did not engage in substantial gainful activity, the RFC will have to be re-evaluated, giving proper weight to Mr. Reid's obesity and Dr. Dunkle's opinion. As a result, the new RFC assessment will presumably affect the analysis at each of the subsequent steps, making it unnecessary for the Court to

11

comment on claims pertaining to those steps. Otherwise, if it is found that Mr. Reid did engage in substantial gainful activity, the analysis does not need to go further and Mr. Reid's claims are likewise moot.

## V.     CONCLUSION

For the foregoing reasons, the final decision of the Commissioner of the Social Security Administration is **REMANDED** for further proceedings consistent with this order.

**SO ORDERED.**

Date: 12/30/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Joseph W. Shull
jshull@joeshull.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov